

**Joseph Brown**
Partner
Direct Dial: 716.848.1346
Direct Facsimile: 716.849.0349
*jsbrown@hodgsonruss.com*

May 7, 2018

**VIA ECF**

Chambers of the Hon. Judith C. McCarthy
United States Magistrate Judge
United States District Court, Southern District of New York
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

Dear Magistrate Judge McCarthy:

        Re:    Claudia Barbini and Maryetta Henry v. First Niagara Bank, et al.
                 Civil Action No: 16-CV-7887

        I am submitting this letter on behalf of Defendants KeyBank National Association (incorrectly referenced as "Key Bank N.A." in the caption), successor by merger to First Niagara Bank, N.A. ("First Niagara"), Irina Damyanidu, and Robert McMichael (collectively, the "Bank" for this letter). The Bank submits this letter and the attached Declaration of Lura Bechtel, attached as **Exhibit A**, in support of its motion for a protective over to preclude the plaintiffs from asking questions about legal advice that Ms. Bechtel provided as the Bank's in-house legal counsel.

        The attorney-client privilege issue at the crux of this motion first arose during the April 26, 2018 deposition of Defendant McMichael, a Human Resources Manager for the Bank. Relevant excerpts from the transcript of McMichael's deposition are attached as **Exhibit B**. During his deposition, counsel for the parties contacted Your Honor via telephone concerning the applicability of the attorney-client privilege to Mr. McMichael and other Bank employees as it relates to this lawsuit. Your Honor asked that the Bank's counsel brief the issue via letter motion. Below is a brief synopsis of this case and the communications at issue followed by the legal analysis supporting the Bank's motion for a protective order.

Hon. Judith C. McCarthy
May 7, 2018
Page 2

## BACKGROUND

This is an employment discrimination and retaliation suit brought by two former employees, Plaintiffs Claudia Barbini and Maryetta Henry, who were terminated from their employment at the Bank on or around September 9, 2015.

A number of employees at the Bank are notaries and are therefore required to follow the New York Notary Public License Law and the Bank's notary public policy.  The Bank's policy states, in pertinent part:  "The person requesting the notary service ***must be physically present in front of you*** and sign the document prior to applying the notary stamp to the document." (emphasis added).

In her position as Assistant Branch Manager, Plaintiff Claudia Barbini was also a licensed notary, and she notarized documents for customers and at the request of management at both branches.  As a Senior Teller, Plaintiff Maryetta Henry was also a licensed notary.  She notarized documents for customers and at the request of the management at the Vassar Branch.

In or around September 2015, Area Manager Irina Damyanidu discovered that notaries at Plaintiffs' branches may have been improperly notarizing documents in violation of Bank policy.  An investigation revealed that Henry and Barbini had been notarizing documents without the customer being present.  It was also determined that Defendant Hugh Lawless, former Branch Manager, knew about the practice and participated in obtaining customer signatures and presenting the document to a notary without the customer present.

The crux of this case is Plaintiffs' retaliation claim.  Plaintiff Henry reported that on or about August 14, 2015, Lawless sent Henry and another employee, a text message with a link to an inappropriate website.  The Bank immediately investigated the incident after Henry reported the matter.  The Bank issued a final written warning to Defendant Lawless the following week.

### A. Privileged Communications Regarding the Investigation and Final Written Warning to Lawless

Mr. McMichael was the HR representative assigned to investigate Plaintiff Henry's claim concerning the text message from Lawless.  As the result of Mr. McMichael's investigation, the Bank placed Defendant Lawless on final written warning.

At deposition, Mr. Michael testified that he had communications with Lawless' Area Manager, Irina Damyanidu, and the Bank's in house legal counsel, Lura Bechtel, Esq, concerning the decision to place Lawless on a final written warning.  Ex. B. Tr. 49-50.  The Bank's counsel objected to the questions that sought to elicit testimony regarding McMichael's specific discussions with Bechtel.  *See id.* Tr. 50, 109-118.

As explained in the accompany declaration of Lura Bechtel, she was employed as the Bank's in-house employment attorney and regularly provided legal advice on employment

Hon. Judith C. McCarthy
May 7, 2018
Page 3

matters. Bechtel Decl., ¶¶ 4-6. Any communications that Attorney Bechtel had with Robert McMichael or others at the Bank regarding the Bank's decisions to issue a final written warning to Lawless were solely for the purpose of providing legal advice on behalf of the Bank. *Id.* at ¶ 9. This is not a situation where Attorney Bechtel was in a business role and merely happened to hold a law degree. She was the Bank's in-house employment attorney.

### B. Privileged Communications Regarding the Termination of Lawless and Plaintiffs

In his testimony, McMichael indicated Marlys Regina, also in the Bank's HR Department, "may" have sought Attorney Bechtel's advice regarding the Bank's decision on whether or not to terminate Lawless and Plaintiffs. Ex. B, Tr. 114-15. He did not have any communications with Attorney Bechtel regarding termination, and he had no direct knowledge of whether or not Ms. Regina had such communications with Attorney Bechtel or any other attorney regarding the bank notary policy. *Id.* at 115-117.

In or around September 2015, Attorney Bechtel "may have been asked by Marlys Regina (Kotyuk), Human Resources Manager, to provide legal advice regarding the termination of Lawless and Plaintiffs Maryetta Henry and Claudia Barbini." Bechtel Decl., ¶ 8.

Ms. Regina has not been deposed in this action, however, the parties have discussed the possibility of arranging for her video conference deposition in early June 2018 – prior to the cutoff for fact depositions.

### ANALYSIS

The decision in *Anderson v. E. CT Health Network, Inc.*, No. 3:12CV785 RNC, 2014 WL 109115 (D. Conn. Jan. 10, 2014) provides a good overview of the applicable Second Circuit law in this area:

> [t]he attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance.... [W]e construe the privilege narrowly because it renders relevant information undiscoverable; we apply it "only where necessary to achieve its purpose." The burden of establishing the applicability of the privilege rests with the party invoking it.
>
> *In re County of Erie*, 473 F.3d 413, 418–19 (2d Cir.2007) (citations omitted). "A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Id*. at 419. The party invoking a privilege bears the burden of establishing all of the elements. *See United States v. Int'l Bhd. of*

Hon. Judith C. McCarthy
May 7, 2018
Page 4

>*Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL–CIO*, 119 F.3d 210, 214 (2d Cir. 1997).

*Id.* at *2.

Here, McMichael and Regina sought Attorney Bechtel's **legal** advice on employment matters and all such communications were intended to be confidential.  As noted by the court in *Anderson*, "[t]he issue of whether a confidential communication between client and counsel is generated for the purpose of obtaining or providing legal assistance often arises in the context of communications with corporate in-house lawyers who also serve as business executives."  *Id.* at 3.  But this is not a case where the in-house attorney was also providing business advice.  Attorney Becthel was clearly an in-house employment attorney whose function was to provide legal advice to Human Resource managers.  She was not wearing a "business hat" for the Bank.  These facts demonstrate that the predominant feature of any communications with Attorney Bechtel was to provide and obtain legal advice.  *See id.* (citing *Lolonga–Gedeon v. Child & Family Services*, No. 1:08CV300A(F), 2012 WL 1714914, at *4 (W.D.N.Y. May 15, 2012) (attorney-client privilege protected pre-termination communications between executive and outside counsel regarding how to avoid being accused of employment discrimination in event defendant decided to terminate plaintiff's employment); *Boudreau v. Gonzalez*, No. 3:04CV1471(PCD), 2006 WL 3462655, at *4 (D.Conn. Nov. 29, 2006) (attorney-client privilege protected pre-termination communications between employer and outside counsel who was retained to provide legal advice to regarding employee's accusation of harassment); *cf. Ashkinazi v. Sapir*, No. 1:02CV002(RCC)(MHD), 2003 WL 76986, at *1 (S.D.N.Y. Jan. 09, 2003) (attorney-client privilege protected pre-termination communications between defendant and in-house counsel regarding legal implications of plaintiff's accusations of misconduct and contract dispute but not counsel's business assessment of plaintiff's performance)).

Based on the foregoing, the Court should issue a protective order finding that any communications that Attorney Bechtel may have had with Marlys Regina, Robert McMichael, or others at the Bank regarding the Bank's decisions to issue a final written warning to Lawless and the terminations of Lawless and Plaintiffs were solely for the purpose of providing legal advice on behalf of the Bank, and that Plaintiffs are therefore prohibited from asking about such communications during depositions.

                                        Respectfully submitted,

                                         s/Joseph S. Brown

                                        Joseph S. Brown

cc:   Brooke Dana Youngwirth, Esq.
      Deidra Jenerva Brown, Esq.
      Melissa Cohen, Esq.
      (via ECF)

14763912v1 019000.07324