

# CORBALLY, GARTLAND AND RAPPLEYEA, LLP

Charles J. Corbally (1966)
John J. Gartland, Jr (2003)
Allan E. Rappleyea (2010)
Michael G. Gartland
Vincent L. DeBiase
Paul O. Sullivan
Rena M. O'Connor
Allan B. Rappleyea
Patrick T. Gartland
Karen E. Hagstrom
Kyle C. Van De Water
Brooke D. Youngwirth
Alexandra C. Downey

Of Counsel
Richard V. Corbally
Jon H. Adams

Since 1876

Bardavon Building
35 Market Street
Poughkeepsie, NY 12601
tel 845 454 1110
fax 845 454 4857

30 Front Street
PO Box 679
Millbrook, NY 12545
tel 845 677 5539
fax 845 677 6297

By Appointment:
Rhinebeck, NY
St. Petersburg, FL

May 14, 2018

Hon. Judith C. McCarthy
US Courthouse
300 Quarropas Street
White Plains, New York 10601-4150

*Re:*   ***Barbini, et al. v. First Niagara Bank, N.A., et al.***
*Civil Action Number: 7:16-cv-07887*

Dear Magistrate Judge McCarthy:

      Please allow the following to serve as a response to Defendants Key Bank National Association, First Niagara Bank, N.A., Irina Damyanidu, and Robert McMichael's letter motion for a protective order, as well as Plaintiffs Maryetta Henry and Claudia Barbini's ("Plaintiffs") request that the Court order Defendants to disclose documentation from First Niagara's sexual harassment and notary investigations that may have been withheld on the basis of privilege because it was reviewed or drafted by First Niagara In-House Counsel and First Vice President, Lura Bechtel.

      Plaintiffs also request that the Court order that Defendants bear the costs and legal fees associated with the instant motion, as well as those to be incurred by Plaintiffs in re-opening the depositions of Robert McMichael and Irina Damyanidu to depose them regarding their communications with Ms. Bechtel. Plaintiffs respectfully request that the Court allow them to submit affidavits of legal fees and costs rendered should the Court determine this motion in Plaintiffs' favor.

      In August 2015, Plaintiffs made a complaint of sexual harassment against their manager, Defendant Hugh Lawless. Thereafter, Plaintiffs and Mr. Lawless were terminated for alleged violations of New York State notary law and First Niagara's notary policy. Defendants allege that First Niagara's investigations into both Plaintiffs' sexual harassment complaint and the alleged notary violations were adequate, while Plaintiffs allege that Defendants used the notary investigation as a pre-text to terminate them. Defendants found Mr. Lawless' conduct did not constitute sexual harassment.

      During the investigation to the notary issues, First Niagara or one of its employees appear to have made the incorrect determination and/or allegation that Plaintiffs violated New York State notary law. See McMichael Deposition Transcript (**Exhibit "A"**), p. 21: 15-25, p. 2-10; p. 24: 4-16. During his deposition, Defendant Robert McMichael indicated that Ms. Bechtel may have made or assisted in making these pivotal determinations, as well as assisted in the investigations of both issues. Id. As such, Plaintiffs are entitled to discovery related to Defendants' conversations with Ms. Bechtel, as well as to depose her and obtain any documents that may be in her possession from First Niagara's investigations.


CORBALLY, GARTLAND AND RAPPLEYEA, LLP

### Defendants Have Failed to Meet the Standard for a Protective Order

Under the Federal Rules of Civil Procedure, "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). The party seeking a protective order bears the burden of proving that the information sought in discovery will result in a cognizable injury to the moving party. Duling v. Gristede's Operating Corp., 266 F.R.D. 66, *71 (S.D.N.Y. Mar. 30, 2010). Defendants have failed to set forth the harm that deposing Ms. Bechtel or the parties regarding their conversations with Ms. Bechtel would cause Defendants. Defendants' only justification for a protective order is that the communications were intended to be confidential. Defendants do not allege that disclosing the conversations that Ms. Bechtel had with the Defendants during the notary and sexual harassment investigations would reveal any information related to Defendants' litigation strategy. Therefore, Defendants' motion must be denied.

Defendants' conversations with Ms. Bechtel are not privileged. Corporate in-house counsel are treated in the same manner as counsel retained from the outside. Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981). However, communications made by and to a corporate in-house counsel with respect to business matters, management decisions, or business advice—and neither soliciting nor predominantly delivering legal advice—are not protected by attorney-client privilege. 6-26 Moore's Federal Practice - Civil § 26.49 (2018). Brownell v. Roadway Package Sys., 185 F.R.D. 19, 21 (N.D.N.Y. 1999) Robinson v. Vineyard Vines, LLC, 2016 U.S. Dist. LEXIS 27948, at *12-13 (S.D.N.Y. Mar. 4, 2016).

The fact that a person is a member of the bar is not enough to establish that person as an attorney for purposes of determining whether the attorney-client privilege applies. Int'l Cards Co. v. Mastercard Int'l Inc., No. 13-CV-02576 (LGS)(SN), 2014 U.S. Dist. LEXIS 125370 (S.D.N.Y. Aug. 27, 2014). A court must examine the circumstances to determine whether the lawyer was acting as a lawyer rather than a business advisor or management decision maker. Id. One important indicator of whether a lawyer is involved in giving legal advice or in some other activity is his or her place in the corporation's organization. 6-26 Moore's Federal Practice - Civil § 26.49 (2018).
Ms. Bechtel was not just "in-house counsel" for First Niagara. Instead, she was also a "First Vice President" and assisted in making management decisions, such as whether to retain, discipline, or terminate an employee. See Lura Bechtel documentation annexed hereto as **Exhibit "B"** and McMichael Deposition Transcript annexed hereto as **Exhibit "A"**. Ms. Bechtel also conducted employee training for First Niagara, along with Karen Aavik, the individual that allegedly handled the Plaintiffs' complaints. Id. Meaningfully, Defendants are not claiming that Ms. Aavik's communications with Defendants are privileged despite her similar job title. See Newsletter annexed hereto as **Exhibit "C"**.

Ms. Bechtel was integral in Defendants' decision as to whether it should terminate Mr. Lawless for sexual harassment and interpreting New York State notary law. See McMichael Deposition Transcript, p. 21: 15-25, p. 2-10; p. 24: 4-16. Mr. McMichael testified that when there is a complaint from a manager, "they would review the allegation and determine---again, working with a combination of our in-house counsel to determine, you know, how to properly---investigate and handle the concern". Id. Mr. McMichael also testified that if a manager and human resources reached an impasse in a management decision regarding termination, in-house counsel would "mediate that discussion". Id. Mr. McMichael testified that the Plaintiff's area manager, Irina Damyanidu, wanted to terminate Mr. Lawless following Plaintiffs' complaint of sexual harassment. However, after a discussion with Ms. Bechtel, First Niagara issued only a written warning to Mr. Lawless. See Tr McMichael p. 47 and 48. See McMichael Transcript, **Exhibit "A"**.


CORBALLY, GARTLAND AND RAPPLEYEA, LLP

      Ms. Bechtel's communications are relevant to an element of disparate treatment upon which Plaintiffs bear the burden of proof. Ms. Bechtel's advice had a direct impact on the Bank's choice to impose progressive discipline rather than to terminate Mr. Lawless. Tr Damyanidu p.76 Lines 13-19, **Exhibit "D"**. *See also* Tr McMichael p.46:11-25, p.49:16-25, p.50:1-13, p.50:25, p.51:2-10. First Niagara did not impose progressive discipline with respect to Plaintiffs alleged violations of New York State notary law. Plaintiffs have the burden of showing that First Niagara treated similarly situated employees disparately. Ms. Bechtel's input is a necessary aspect of that proof.
In addition, Ms. Bechtel may have been involved in the decision to terminate the Plaintiffs and may have interpreted New York State notary law for Defendants prior to the termination of the Plaintiffs. Plaintiffs intend to depose another employee of Human Resources, Maryls Regina, who appears to have been directly involved in the decision to terminate the Plaintiffs. If Ms. Regina consulted with Ms. Bechtel regarding that decision or Ms. Bechtel's interpretation of New York State notary law, Plaintiffs are entitled to question Ms. Regina regarding those interactions.

      In McDonnell-Douglas Corporation v. Green, 411 U.S. 792, 802-804 (1973), the Supreme Court first enunciated the now-familiar "burden-shifting" formula used in analyzing Title VII employment discrimination claims based on indirect or circumstantial evidence.

      Plaintiffs, pursuant to their burdens under McDonnell-Douglas, must prove the invalidity of Defendants' proffered reason for terminating Plaintiffs, violation of New York State notary law. The discovery Defendants are attempting to limit is relevant to Plaintiffs theory of the case, and Plaintiffs are entitled to discovery. Defendants have not provided one example where this Court has agreed to a protective order limiting Plaintiffs right to discovery in the manner the Defendants attempt here. As such, the Court must deny Defendants' request for a protective order.

      Next, Defendants have waived privilege as to all attorney-client communications and work-product from Ms. Bechtel by employing as defenses to Defendants' liability and Plaintiff's entitlement to punitive damages that: (1) Plaintiffs' were terminated for "illegal" notary activity, and (2) First Niagara's sexual harassment and notary investigations were adequate.

      Where an employer defends itself by relying upon the reasonableness of its response to an employee's allegation of harassment, the adequacy of the employer's investigation becomes critical to the issue of liability. Id. As stated by the Southern District Court, "when an employer puts the reasonableness of an internal investigation at issue by asserting the Faragher/Ellerth defense, the employer waives any privilege that might otherwise apply to documents concerning that investigation." Koumoulis, 295 F.R.D, at 41. See Pray v. New York City Ballet Co., 1997 U.S. Dist. LEXIS 6995, No. 96 CIV. 5723(RCL)(HBP), 1997 WL 266980, at *1 (S.D.N.Y. May 19, 1997). Defendants assert a Faragher/Ellerth defense. Their Seventeenth Affirmative Defense state that "First Niagara asserts that it undertook good faith efforts to prevent and remedy any alleged discrimination or retaliation and that Plaintiffs unreasonably failed to avail themselves of First Niagara's internal procedures for remedying any such discrimination or retaliation". See Defendant's Answer Docket # 21. Furthermore, First Niagara's Sixth Affirmative Defense states that "any employment actions taken by First Niagara towards Plaintiffs was for reasons that were job-related and consistent with business necessity". Id.

      First Niagara's position in this case is that their investigation into Mr. Lawless' conduct was adequate and that after a thorough investigation into notary practices, Plaintiffs were terminated for violating New York State notary law and First Niagara's notary policy. In Defendants' EEOC position papers, they went so far as to allege that Plaintiffs engaged in "illegal" notary activity.


CORBALLY, GARTLAND
AND RAPPLEYEA, LLP

Ms. Bechtel was involved in both investigations. In fact, her name appears in the investigative report for the sexual harassment investigation. See Investigative Report annexed hereto as **Exhibit "E"**. By asking Ms. Bechtel to serve multiple duties, both as a human resources decision maker, as well as counsel, the Defendants have fused the roles of internal investigator and legal advisor. Consequently, Defendants cannot now argue that its own process is shielded from discovery. Consistent with the doctrine of fairness, the Plaintiffs must be permitted to probe the substance of Defendants' investigation and decision-making process with regards to the notary and sexual harassment issues to determine their sufficiency. Without having evidence of the actual content of the investigation, neither the Plaintiffs, nor the fact-finder at trial, can discern its adequacy.

Similarly, Defendants appear to be relying on an "advice of counsel" defense. Defendants' affirmative pleadings put both the advice of Ms. Bechtel and the willfulness of Defendants' actions specifically at issue. Defendants have alleged that Defendants' liability and/or Plaintiff's entitlement to damages is either limited or completely negated because it determined that Plaintiffs violated the Defendants' notary policy and/or New York State law. Plaintiffs are therefore entitled to all documents and communications related to the advice provided to Defendants by Lura Bechtel, if any, regarding her interpretation of New York State notary law, as well as her advice to Defendants as to whether Mr. Lawless' conduct constituted sexual harassment, and whether Mr. Lawless and Plaintiffs should be terminated.

Courts have universally held that "as fundamental as the attorney-client privilege is, a client may in certain circumstances waive the privilege-for example, by asserting reliance upon the advice of counsel as an affirmative defense." Windsor Secs, LLC v. Arent Fox LLP, 273 F. Supp. 3d 512 (S.D.N.Y. 2017). Similarly, as a matter of fundamental fairness, where a defendant asserts the "advice of counsel" defense a plaintiff is entitled to discover the nature and circumstances of the legal advice upon which the defendant supposedly relied-notwithstanding the attorney-client privilege that would otherwise apply. Id.

In addition, a plaintiff is entitled to punitive damages under Title VII where "the employer has engaged in intentional discrimination and has done so with malice or with reckless indifference to the federally protected rights of an aggrieved individual. " Kolstad v. American Dental Ass'n 527 U.S. 526 (1999) Rosso v. PI Management Associates. LLC, 2005 WL 3535060 (S.D.N.Y. 2005); Kolstad, 527 U.S. 526.

Defendants have therefore waived privilege, not only as to the advice provided by Ms. Bechtel to Defendants, but also as to all communications or documents that potentially relate to the willfulness or maliciousness of Defendants' actions and Defendants' knowledge of all anti-discrimination and notary laws. All communications between Ms. Bechtel and Defendants are potentially relevant to both issues and are likely to lead to discovery of evidence material to this action. As such, Plaintiffs are entitled to the information sought.

Moreover, First Niagara has waived any claim of privilege by sharing privileged information regarding Lura Bechtel with Key Bank. See In re In-Store Adver. Sec. Litig., 163 F.R.D. 452, 458 (S.D.N.Y. 1995) (privilege waived when attorney-client communications transferred to another corporation in connection with sale of assets).
Key Bank and First Niagara are two separate entities. Multiple employees of Key Bank have testified that Key Bank did not simply merge with First Niagara, but instead they were employed by First Niagara and were subsequently offered new employment with Key Bank. Therefore, while Key Bank did take over portions of First Niagara's business, the two entities did not effectively merge, but instead only assets were transferred.


CORBALLY, GARTLAND AND RAPPLEYEA, LLP

    In an asset sale, the seller's employees are typically terminated and then re-hired by the buyer. Here, First Niagara's employees were either terminated or re-hired by Key Bank. Therefore, any information that was shared between First Niagara and the other Defendants, including Key Bank, is no longer privileged. The attorney-client privilege is automatically waived when a privileged communication is disclosed to a third party or litigation adversary. See Ricoh Co., Ltd. v. Aeroflex Inc., 219 F.R.D. 66, 70 (S.D.N.Y. 2003). There is no question as to whether First Niagara has shared privileged information with Key Bank. The two entities have the same counsel and that counsel has invoked privilege on behalf of both entities simultaneously. As such, Defendants' motion seeking to limit discovery and enter a protective order should be denied and the Court deem privilege waived.

    Finally, Plaintiffs respectfully request that the Court order that Defendants bear the costs associated with the instant motion, as well as the expenses and legal fees associated with re-opening the depositions of Robert McMichael and Irina Damyanidu pursuant to Federal Rules of Civil Procedure Rule 37. Plaintiffs respectfully request that the Court allow them to submit affidavits of legal fees and costs rendered with respect to the instant letter motion, as well as expenses and fees incurred as the result of re-opening the depositions at a date to be determined by the Court.

    Defendants have failed to meet their burden and failed to evidence that they are in any way harmed or prejudiced by permitting discovery to move forward. However, to allow such limitations to Plaintiffs right to discovery would result in undue injustice, and prejudice. Defendants are woefully delayed in seeking the instant protective order and should have moved prior to depositions being conducted. Therefore, costs and fees are appropriate.

Very truly yours

CORBALLY, GARTLAND AND RAPPLEYEA, LLP

Brooke D. Youngwirth

cc:    Joe Brown, Esq.
       Jen Brown, Esq.
       Melissa Cohen, Esq.