

**Joseph Brown**
Partner
Direct Dial: 716.848.1346
Direct Facsimile: 716.849.0349
*jsbrown@hodgsonruss.com*

May 21, 2018

**VIA ECF**

Chambers of the Hon. Judith C. McCarthy
United States Magistrate Judge
United States District Court, Southern District of New York
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

Dear Magistrate Judge McCarthy:

        Re:    Claudia Barbini and Maryetta Henry v. First Niagara Bank, et al.
              Civil Action No: 16-CV-7887

      I am submitting this letter on behalf of Defendants KeyBank National Association (incorrectly referenced as "Key Bank N.A." in the caption), successor by merger to First Niagara Bank, N.A. ("First Niagara"), Irina Damyanidu, and Robert McMichael (collectively, the "Bank" for this letter). The Bank submits this reply in further support of its motion for a protective order and in reply to Plaintiff's opposition (Docket No. 50).

      As previously asserted, any communications that the Bank's in-house employment attorney, Lura Bechtel, may have had with Marlys Regina, Robert McMichael, or others at the Bank regarding the Bank's decisions to issue a final written warning to Lawless and the terminations of Lawless and Plaintiffs were solely for the purpose of providing legal advice on behalf of the Bank. The Plaintiff's reply letter misconstrues the law and facts in several key respects.

      First, Plaintiff wrongly asserts that "First Niagara or one of its employees appear to have mad the incorrect determination and/or allegation that Plaintiff's violated New York State notary law." Pl. Opp. Letter at 1. This is not the standard in an employment discrimination case. Courts are "decidedly not interested in the truth of the allegations against plaintiff. [The courts] are interested in what motivated the employer; the underlying imputation against the employee is not at issue." *McPherson v. N.Y. City Dep't. of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006). *See also Zhao v. Time, Inc.*, 440 Fed. Appx. 50, 51 (2d Cir. 2011) (plaintiff's allegation that her conduct was justified, even if found to be compelling, was not sufficient to show pre-text

Hon. Judith C. McCarthy
May 21, 2018
Page 2

as the court is concerned only with the employer's motivation); *DeFina v. Meenan Oil Co., Inc.*, 924 F. Supp. 2d 423, 435 (E.D.N.Y. 2013) ("Plaintiff's arguments raise issue only as to the accuracy or the wisdom of defendants' decision to terminate plaintiff, but fail to create a triable issue of fact as to whether the proffered reasons for plaintiff's termination were a pretext for discrimination."). In other words, it does not matter whether or not the Bank correctly interpreted New York notary law. Nor can the Bank invoke, as an affirmative defense, that it relied on the advice of counsel to avoid or limit liability on any of Plaintiff's claims.

Second, the Bank is not asserting that its investigation of Plaintiff's Henry complaint concerning Lawless is privileged. Ms. Bechtel did not conduct the investigation. Nor did she make any employment decision. The Bank's contention is that any legal advice Ms. Bechtel provided regarding the discipline issued to Lawless is privileged. Whether or not the Bank's investigation was "reasonable" does not turn on whether or not legal advice was sought by Mr. McMichael or Ms. Damyanidu. This distinction is critical and overlooked in Plaintiff's opposition letter.

It is undisputed that the Bank conducted an investigation and that as a result of the investigation a final written warning was issued to Lawless. The Case Detail Report and emails concerning the Bank's investigation have been produced. Mr. McMichael and Ms. Damyanidu each provided extensive deposition testimony about the investigation and the Bank's decision to issue a final written warning for Lawless. A fact finder will have adequate evidence from which to determine the reasonableness of the Bank's investigation if it is called into question. Ms. Bechtel's legal advice has nothing to do with the reasonableness of the investigation. The Bank does not contend otherweise.

Third, Plaintiff has no meaningful counter to Attorney Bechtel's description of her legal duties as Assistant General Counsel. The best that Plaintiff can cobble together is that Attorney Bechtel had the words "Vice President" in her job title and that she conducted training on "internal communications" on or around November 13, 2014 – training not at issue in this litigation. Pl. Reply Letter at 2. Vice president is a very common title in financial institutions, however, the key lies in her role as Assistant General Counsel. Ms. Bechtel was the Bank's in-house employment attorney who provided Human Resources ***with legal advice*** on personnel matters.

The comparison that Plaintiff attempts to make between Ms. Bechtel and Karen Aavik actually supports the Bank's position. By way of background, Ms. Aavik was the Bank's Compliance Officer. As it pertains to this case, Ms. Aavik was the Case Manager assigned to oversee the Bank's processing of Henry's complaint – made via the Bank's Compliance 1-800 hotline – regarding the Lawless text message. Ms. Aavik simply assigned the matter to Human Resources for investigation and monitored the Case Detail Report to ensure Henry's complaint was processed. She did not conduct the actual investigation. Though Ms. Aavik happens to hold a law degree, the Bank is not asserting that any communications she had with McMichael are privileged. In stark contrast to Ms. Bechtel's job as the Bank's in-house employment attorney, Ms. Aavik did not provide legal advice to Mr. McMichael.

Hon. Judith C. McCarthy
May 21, 2018
Page 3

   Fourth, Plaintiff asserts that she is entitled to question Marlys Regina, a former HR employee for the Bank, concerning any communications she had with Ms. Bechtel regarding the decision to terminate Plaintiffs or "Ms. Bechtel's interpretation of New York State notary law." Pl. Reply Letter at 2. As a practical matter, and without waiving any privilege, Ms. Regina and Ms. Bechtel would both testify that they have no recollection of any communications of "Ms. Bechtel's interpretation of New York State notary law" as it relates to Plaintiffs' termination. At most, both Ms. Regina and Ms. Bechtel generally recall that they *may* have had discussions about the terminations of Lawless and Plaintiffs in September 2015. Neither has a specific recollection of any such communications. Nor were there any e-mails or other documents concerning such communications.

   With that said, Ms. Regina and Ms. Bechtel will testify it was not uncommon for Ms. Regina to communicate with Ms. Bechtel and seek *legal advice* concerning employment matters – an activity that in-house employment lawyers and HR professionals engage in everyday with the expectation that such confidential communications will be protected by the attorney-client privilege. As noted by the Second Circuit, legal advice requires "a lawyer to rely on legal education and experience to inform judgment. . . . But it is broader, and is not demarcated by a bright line." *In re County of Erie*, 473 F.3d 413, 419–20 (2d Cir. 2007) ("The modern lawyer almost invariably advises his client upon not only what is permissible but also what is desirable. And it is in the ... public interest that the lawyer should regard himself as more than [a] predicter of legal consequences. His duty to society as well as to his client involves many relevant social, economic, political and philosophical considerations. And the privilege of nondisclosure is not lost merely because relevant nonlegal considerations are expressly stated in a communication which also includes legal advice."). Because the predominant purpose of any advice provided by Ms. Bechtel was legal in nature, the Court should grant the Bank's motion for a protective order.

          Respectfully submitted,

           s/Joseph S. Brown

          Joseph S. Brown

cc:  Brooke Dana Youngwirth, Esq.
    Deidra Jenerva Brown, Esq.
    Melissa Cohen, Esq.
    (via ECF)

14778647v1 019000.07324