UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

CLAUDIA BARBINI, *et al.*,

                        Plaintiffs,

        -against-

FIRST NIAGARA BANK, N.A., *et al.*,

                        Defendants.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

16 Civ. 7887 (NSR) (JCM)

       On April 26, 2018, counsel in the instant matter telephoned the Court regarding a dispute over the application of the attorney-client privilege during the deposition of Defendant Robert McMichael. After hearing from both sides, the Court directed the parties to brief the issue. Presently before the Court is a letter motion for a protective order submitted by Defendants KeyBank National Association, Irina Damyanidu, and Robert McMichael (the "Bank" or "the Bank Defendants"). (Docket No. 49). Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Bank seeks an order "to preclude the plaintiffs from asking questions about legal advice that Ms. [Lura] Bechtel provided as the Bank's in-house legal counsel." (*Id.* at 1). Plaintiffs Claudia Barbini and Maryetta Henry ("Plaintiffs") submitted a letter opposing the Bank's motion. (Docket No. 50). In addition, Plaintiffs request that the Court order the Bank to: (1) disclose the documentation from First Niagara's sexual harassment and notary investigations; and (2) bear the costs and legal fees associated with the instant motion, as well as those to be incurred in re-opening the depositions of Robert McMichael and Irina Damyanidu. (*Id.*). The Court also considered reply letters submitted by the parties. (Docket No. 55, 56). The matter was fully submitted on May 25, 2018. For the reasons set forth below, the Bank's motion is denied and Plaintiffs' motion is granted in part.

1

## I. BACKGROUND

In August 2015, Plaintiffs, employees of First Niagara Bank, N.A.[1] ("First Niagara"), made a complaint of sexual harassment against their manager, Defendant Hugh Lawless. (Docket No. 50 at 1). Defendant Robert McMichael, a human resources representative for First Niagara, was assigned to investigate the sexual harassment complaint. (Docket No. 49 at 2). Based on McMichael's recommendation, the Bank issued a final written warning to Lawless. (*Id.*). Shortly thereafter, Plaintiffs and Lawless were terminated for alleged violations of New York State notary law and First Niagara's notary policy. (*Id.*). Plaintiffs subsequently brought this employment discrimination and retaliation suit against the Bank. (Docket No. 7). Plaintiffs allege that the Bank "used the notary investigation as a pre-text to terminate them." (Docket No. 50 at 1).

During McMichael's deposition, he was asked about his decision to give Lawless a final warning. (Docket No. 49-2 at 3). McMichael indicated that he discussed the decision with Lawless' manager, Irina Damyanidu, and the Bank's in-house counsel, Lura Bechtel. (*Id.* at 3–4). When asked about Bechtel's perspective, McMichael's counsel objected on the basis of the attorney-client privilege. (*Id.* at 4). Similarly, McMichael's counsel invoked the attorney-client privilege when McMichael was asked about a conversation he had with Bechtel regarding the sexual harassment allegations against Lawless. (*Id.* at 5, 9–10). Plaintiffs' counsel also directly asked McMichael about the advice Bechtel provided regarding the final warning, New York's notary law, and Lawless' termination. (*Id.* at 9–25). McMichael's counsel again objected on the basis of the attorney-client privilege.

---

[1] Defendant KeyBank National Association is the successor by merger to First Niagara. (Docket No. 47-1 at 1).

The parties have also discussed the possibility of deposing Marlys Regina, who worked in the Bank's human resources department. (Docket No. 49 at 3). Regina may have asked Bechtel to provide legal advice regarding the termination of Lawless and Plaintiffs. (*Id.*). Thus, the Bank argues that the attorney-client privilege shields these communications as well.

## II. LEGAL STANDARDS

### A. Protective Orders

Rule 26(c) of the Federal Rule of Civil Procedure provides that a court may issue "an order to protect a party or person [from whom discovery is sought] from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The district court has "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 20 (2d Cir. 1992) ("[T]he grant or denial of a protective order lies within the sound discretion of the district court.").

"The party seeking a protective order bears the burden of establishing that good cause for the order exists." *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71 (S.D.N.Y. Mar. 30, 2010). "Good cause is established by 'demonstrating a particular need for protection.'" *Id.* (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)). "Ordinarily, good cause exists 'when a party shows that disclosure will result in a clearly defined, specific and serious injury.'" *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (quoting *Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005)). "Although the burden is on the movant to establish good cause for the entry of a protective order, the court ultimately weighs the interests of both sides in fashioning an order." *Duling*, 266 F.R.D. at 71.

**B. Attorney-Client Privilege**

The attorney-client privilege protects "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). "For the privilege to apply, the communication itself must be 'primarily or predominantly of legal character.'" *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 428 (S.D.N.Y. 2013) (quoting *Rossi v. Blue Cross & Blue Shield of Greater N.Y.*, 73 N.Y.2d 588, 594 (1989)); *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007) ("Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct."). "It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *In re Grand Jury Subpoena Dtd. Jan. 4, 1984*, 750 F.2d 223, 224 (2d Cir. 1984); *In re Bonnano*, 344 F.2d 830, 833 (2d Cir. 1965) ("That burden is not, of course, discharged by mere conclusory or ipse dixit assertions[.]"). "The party asserting privilege also has the burden to establish that there has been no waiver." *Egiazaryan*, 290 F.R.D. at 428.

"Application of the attorney-client privilege to the corporate context poses 'special problems.'" *Complex Sys., Inc. v. ABN AMRO Bank N.V.*, 279 F.R.D. 140, 150 (S.D.N.Y. 2011) (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985)). "In-house counsel often fulfill the dual role of legal advisor and business consultant." *MSF Holding, Ltd. v. Fiduciary Tr. Co. Int'l*, No. 03 Civ. 1818 PKLJCF, 2005 WL 3338510, at *1 (S.D.N.Y. Dec. 7, 2005). "The court therefore must proceed cautiously, recognizing that the application of the privilege 'risks creating an intolerably large zone of sanctuary since many corporations continuously consult attorneys.'" *Ovesen v. Mitsubishi Heavy Indus. of Am. Inc.*, No. 04 Civ.

2849(JGK)(FM), 2009 WL 195853, at *3 (S.D.N.Y. Jan. 23, 2009) (quoting *First Chicago Int'l v. United Exch. Co.*, 125 F.R.D. 55, 57 (S.D.N.Y. 1989)). "In cases involving corporations and in-house counsel, courts have maintained a stricter standard for determining whether to protect confidential information through the attorney-client privilege." *Bank Brussells Lambert v. Credit Lyonnais (Suisse), S.A.*, 220 F. Supp. 2d 283, 286 (S.D.N.Y. 2002).

**C. Waiver**

"[R]ules which result in the waiver of [the attorney-client] privilege and thus possess the potential to weaken attorney-client trust," have been formulated with caution. *In re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008). Courts have found waiver by implication in three circumstances: (1) "when a client testifies concerning portions of the attorney-client communication"; (2) "when a client places the attorney-client relationship directly at issue"; and (3) "when a client asserts reliance on an attorney's advice as an element of a claim or defense[.]" *Id.* (internal quotation marks omitted).

The assertion of the third instance, the advice of counsel defense, "has been properly described as a 'quintessential example' of an implied waiver of the privilege." *Id.* (quoting *In re Kidder Peabody Secs. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996)). "The key to a finding of implied waiver . . . is some showing by the party arguing for a waiver that the opposing party *relies* on the privileged communication as a claim or defense or as an element of a claim or defense." *Id.* "In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) ("Whether fairness requires disclosure has been decided by the courts on a case-by case basis, and depends primarily on the specific context in

which the privilege is asserted."). The Second Circuit, however, has declined to "specify or speculate as to what degree of reliance is required[.]" *In re County of Erie*, 546 F.3d at 228.

### D. The *Faragher/Ellerth* Defense

Relatedly, "[i]n discrimination cases, the issue of waiver frequently arises when a defendant raises what is known as the *Faragher/Ellerth* defense." *Johnson v. J. Walter Thompson U.S.A., LLC*, 16 Civ. 1805 (JPO)(JCF), 2017 WL 3432301, at *8 (S.D.N.Y. Aug. 9, 2017); *Williams v. Fire Sprinkler Assocs. Inc.*, Civ. 15-3147 (ADS) (AKT), 2017 WL 1155771, at *5 (E.D.N.Y. Mar. 27, 2017). Where an employee asserts a Title VII claim for workplace harassment against a supervisor and no tangible employment action is taken, "the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities that the employer provided." *Vance v. Ball State University*, 570 U.S. 421, 424 (2013); *see Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). "When an employer puts the reasonableness of an internal investigation at issue by asserting the *Faragher/Ellerth* defense, the employer waives any privilege that might otherwise apply to documents concerning that investigation." *Koumoulis v. Independent Fin. Marketing Group Inc.*, 295 F.R.D. 28, 41 (E.D.N.Y. 2013); *Williams*, 2017 WL 1155771, at *5.

### III. DISCUSSION

### A. Communications with Bechtel

The Bank argues that the attorney-client privilege applies to the conversations McMichael and Regina had with Bechtel regarding Lawless' final written warning, his later termination, and the decision to terminate Plaintiffs. (Docket No. 49 at 4). Plaintiffs, however, maintain that Bechtel, who also served as "First Vice President" for the bank, was not

6

"predominantly delivering legal advice" during the conversations at issue. (Docket No. 50 at 2). Given Bechtel's role as "First Vice President, Assistant General Counsel," (Docket No. 47-1 at ¶4), there is no question that Bechtel's communications with McMichael and Regina likely involved the provision of both legal and business advice, *see In re County of Erie*, 473 F.3d at 420 ("The modern lawyer almost invariably advises his client upon not only what is permissible but also what is desirable."). The purpose of a communication, however, "need not be exclusively legal in order for the privilege to attach." *Johnson*, 2017 WL 3432301, at *3; *In re General Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 530 (S.D.N.Y. 2015) ("The primary purpose test . . . does not require a showing that obtaining or providing legal advice was the *sole* purpose of an internal investigation or that the communications at issue would not have been made but for the fact that legal advice was sought." (internal quotation marks omitted)).

Thus, to the extent that Bechtel was asked to interpret and apply New York notary law, the Court finds such communications to be predominantly legal in nature and therefore covered by the attorney-client privilege. Application of the attorney-client privilege to the communications regarding the final written warning and the subsequent decisions to terminate Lawless and Plaintiffs is less clear cut, as Bechtel performed "the dual role of legal advisor and business consultant." *MSF Holding*, 2005 WL 3338510, at *1. Having reviewed the deposition transcripts and Bechtel's sworn declaration, however, the Court finds that the communications with Bechtel were predominantly legal in nature. (*See* Docket No. 47-1 at ¶¶ 7, 8; Docket No. 50-1 at 7, 13–14). McMichael made clear that the human resources department generally involved in-house counsel when reviewing allegations of misconduct in order to determine the proper course of action. (Docket No. 50-1 at 7). In soliciting advice from in-house counsel, as opposed to another non-legal manager, human resources clearly sought something more than

7

mere "commercial wisdom," *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015), and sought to rely on in-house counsel's "legal education and experience to inform judgment," *In re County of Erie*, 473 F.3d at 419; *see also Fletcher v. ABM Building Value*, 14 Civ. 4712 (NRB), 2017 WL 1536059, at *3 (S.D.N.Y. Apr. 18, 2017) (finding that communicating "legal analysis to the person ultimately deciding whether to fire an employee" is "precisely the type of legal advice that is protected by the attorney-client privilege").

Nevertheless, Plaintiffs maintain that the Bank has waived the attorney-client privilege by asserting its reliance on the advice of Ms. Bechtel as a defense to Plaintiffs' claims. (*See* Docket No. 50 at 4). In short, Plaintiffs allege that the Bank discriminated against them on the basis of their gender in violation of Title VII. (Docket No. 1 at 13–15). The Bank denies such allegations and contends that Plaintiffs were terminated for violating First Niagara's notary policy. (Docket No. 21 at ¶ 23). Thus, Plaintiffs argue that any advice Bechtel provided regarding New York state notary law is at issue. (Docket No. 50 at 4). As an initial matter, the Bank does not assert an advice of counsel defense anywhere in its answer. (*See* Docket No. 21). Rather, the Bank merely states that it terminated Plaintiffs due to violations of First Niagara's notary policy. (*Id.* at ¶¶ 23, 28). Moreover, the Bank has expressly disclaimed reliance on counsel as part of its defense. (*See* Docket No. 55 at 2). These facts, however, are not controlling in determining whether the privilege is waived. *See Enea v. Bloomberg L.P.*, No. 12 Civ. 4656–GBD–FM, 2015 WL 4979662, at *7–8 (S.D.N.Y. Aug. 20, 2015) (noting that disclosure of privileged documents may be required despite a defendant's "express disclaimer of any reliance on counsel as part of its affirmative defense of good faith"); *Bodega Investments, LLC ex rel. Kreisberg v. United States*, No. 08 Civ. 4065(RMB)(MHD), 2009 WL 2634765, at *3 (S.D.N.Y. Aug. 21, 2009) (explaining that even where the defendant was not asserting an advice of counsel defense,

"waiver would be found if his testimony implicated such advice"); *see also Bath & Body Works Brand Management, Inc. v. Summit Entertainment, LLC*, No. 11 Civ. 1594(GBD)(JLC), 2013 WL 3479418, at *3 (S.D.N.Y. July 9, 2013) (listing cases in the Southern District of New York that discuss defendants' reliance on advice of counsel even though it was not raised as an affirmative defense in their answer).

Therefore, the relevant inquiry is whether the Bank is relying upon Bechtel's legal advice to some extent as part of its defense against Plaintiffs' employment discrimination claims. *In re County of Erie*, 546 F.3d at 229. Here, the Bank's defense—its articulated non-discriminatory reason for terminating Plaintiffs—is that Plaintiffs were terminated for violating its notary policy. (Docket No. 21 at ¶¶ 23, 28). McMichael's testimony, as well as the Banks' letters to the Court, indicate that the Bank made its decisions to terminate based, at least in part, on the legal advice provided by Bechtel. (*See* Docket No. 49 at 4; Docket No. 55 at 3). Accordingly, the factual truth of the Bank's defense "can only be assessed by examination of a privileged communication."[2] *Johnson,* 2017 WL 3432301, at *7 ("A person may waive protection where he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication, even if he does not explicitly rely on that communication."); *Leviton Mfg. Co. v. Greenberg Traurig LLP*, No. 09 Civ. 8083(GBD)(THK), 2010 WL 4983183, at *3 (S.D.N.Y. Dec. 6, 2010), *objections overruled*, No. 09 Civ. 8083 (GBD)(THK), 2011 WL 2946380 (S.D.N.Y. July 14, 2011) ("Courts have recognized that a party need not explicitly rely upon

---

[2] Plaintiffs will ultimately need to establish that the Bank's given reason for termination was merely a pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also McPherson v. New York City Dept. of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("[Courts] are interested in what *motivated* the employer; the factual validity of the underlying imputation against the employee is not at issue." (internal quotation marks omitted)). While the Court agrees with the Bank Defendants that "it does not matter whether or not the Bank correctly interpreted New York notary law," (Docket No. 55 at 2), the Bank's allegedly benign motivations for terminating Plaintiffs are themselves the asserted defense. Thus, Plaintiffs are entitled to explore the Banks' asserted motives as it relates to whether the given reason for termination was pretextual.

9

advice of counsel to implicate privileged communications. Instead, advice of counsel may be placed in issue where, for example, a party's state of mind, such as his good faith belief in the lawfulness of his conduct, is relied upon in support of a claim of defense.").[3] The Bank cannot claim that it acted in good faith and simultaneously use the attorney-client privilege to shield Bechtel's communications regarding the decisions to terminate. Doing so denies Plaintiffs access to information that may rebut the Bank's good faith assertion and prejudices Plaintiffs' case. *See John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003) (explaining that it would be unfair to allow a party to "use[ ] an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion").

Therefore, the Bank has "opened up their counsel's advice only with respect to their decision to terminate Plaintiff[s]' employment." *Asberry v. Corinthian Media, Inc.*, No. 09 Civ. 1013(CM)(DFE), 2009 WL 3073360, at *2 (S.D.N.Y. Sept. 18, 2009). Moreover, the Bank puts forth no other justifications that would warrant the issuance of a protective order. Accordingly, Plaintiffs are permitted to question McMichael and Regina regarding the legal advice Bechtel provided in connection with the decision to give Lawless the final warning and the later decisions to terminate Lawless and Plaintiffs. *See id.* (permitting questioning of counsel as "to the advice provided by him or any other attorney concerning the possibility of terminating [plaintiff's] employment, including all information that was considered in connection with such advice").

---

[3] The Bank's answer explicitly asserts a good faith defense. (*See* Docket No. 21 at ¶ 33 ("Any employment action taken by Defendants towards Plaintiff were taken in good faith and without malice in keeping with its supervisory authority over Plaintiffs.")).

10

**B. Disclosure of Documentation from Human Resources Investigation**

Plaintiffs request that the Court order the Bank Defendants to disclose documentation from First Niagara's sexual harassment and notary investigations that may have been withheld on the basis of privilege. (Docket No. 50 at 1). The Bank maintains that it is not asserting that its investigation of Plaintiff Henry's complaint concerning Lawless is privileged and thus, the Bank has already produced the "Case Detail Report and emails concerning the Bank's investigation[.]" (Docket No. 55 at 2). To the extent that any documents from either the sexual harassment or notary investigation have been withheld on the basis of privilege, the Court notes that the privilege has likely been waived, but the Court declines to make such a finding without reviewing the documents *in camera*.

"[W]hen a party asserts a good faith defense, as the [Bank] Defendants appear to do here,[4] it may not selectively proffer the information upon which it relied." *Johnson*, 2017 WL 3432301, at *8; *Koumoulis v. Independent Fin. Marketing Grp., Inc.*, 29 F. Supp. 3d 142, 148 (E.D.N.Y. 2014) ("[B]y asserting a *Faragher/Ellerth* defense, Defendants waived that privilege with respect to any documents relating to the reasonableness of Defendants' efforts to correct the allegedly discriminatory behavior and the reasonableness of its investigative policies and practices."). Accordingly, "the extent to which the [Bank] Defendants acted in good faith on the basis of the [investigation reports] is dependent upon the totality of the legal advice they received." *Johnson*, 2017 WL 343201, at *8 (finding communications related to the attorneys' conclusions, "but not the reliability of the investigation leading to those conclusions" to be discoverable).

---

[4] (Docket No. 21 at ¶ 48 ("First Niagara asserts that it undertook good faith efforts to prevent and remedy any alleged discrimination or retaliation . . . .")).

If it has not done so already, the Bank is directed to produce a privilege log that describes the documents being withheld and identifies the nature of the privilege being claimed. The parties are further directed to meet and confer regarding any disputed documents. Should any disputes remain after the meet and confer, Plaintiffs may bring them to the Court's attention. The Bank will be directed to produce any documents in dispute so that the Court can "determine whether fairness necessitates the disclosure of these documents to the [Plaintiffs]." *Johnson*, 2017 WL 343201, at *8. If the Bank has not withheld any documents relating to either investigation, Plaintiffs' request is moot.

## IV. CONCLUSION

For the reasons set forth above, the Bank's motion for a protective order is denied. Robert McMichael's deposition is reopened, but Plaintiffs' questioning is limited to McMichael's conversations with Lura Bechtel regarding the issues discussed herein. In addition, the Bank is directed to produce a privilege log that describes the documents being withheld and identifies the nature of the privilege being claimed. The parties are directed to meet and confer regarding disputed documents prior to bringing such disputes to the Court's attention. Finally, the Court denies Plaintiffs' request for costs and attorneys' fees. *See Seema Gems, Inc. v. Shelgem, Ltd.*, No. 93 Civ. 4473 (KMW), 1994 WL 86381, at *2 (S.D.N.Y. Mar. 16, 1994) ("[T]he court has considerable discretion to allocate the costs of discovery, pursuant to Rule 26(c)(2) of the Federal Rules of Civil Procedure.").

Dated: July 16, 2018
      White Plains, New York

SO ORDERED:

*Judith C. McCarthy*

JUDITH C. McCARTHY
United States Magistrate Judge