UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

CLAUDIA BARBINI and MARYETTA HENRY,

                        Plaintiffs,

     v.                                           Civil No.:  16-CV-7887-NSR-JCM

FIRST NIAGARA BANK, N.A., KEY BANK N.A. as
successor in interest to First Niagara Bank N.A., IRINA
DAMYANIDU, in her official and individual
capacities, ROBERT McMICHAEL, in his official and
individual capacities and HUGH LAWLESS, in his
official and individual capacities,

                        Defendants.
_____

# REPLY MEMORANDUM OF LAW IN SUPPORT OF OBJECTIONS TO MAGISTRATE JUDGE'S ORDER DENYING THE BANK'S MOTION FOR A PROTECTIVE ORDER

 

**HODGSON RUSS LLP**
Attorneys for *Defendants KeyBank National Association, Irina Damyanidu, and Robert McMichael*
Joseph S. Brown, of counsel
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000

**PRELIMINARY STATEMENT**

Defendants KeyBank National Association (incorrectly referenced as "Key Bank N.A." in the caption), successor by merger to First Niagara Bank, N.A. ("First Niagara"), Irina Damyanidu, and Robert McMichael (collectively, the "Bank") submit their Reply in further support of the Bank's Objections to Magistrate Judge McCarthy's Decision and & Order (Dkt. No. 61) denying the Bank's motion for a protective order concerning the application of the attorney-client privilege to communications between the Bank's Human Resources employees (Defendant Robert McMichael and Marlys Regina) and the Bank's in-house employment counsel, Lura Bechtel.

**ARGUMENT**

**I.   ATTORNEY BECHTEL WAS NOT INVOLVED THE INVESTIGATION CONCERNING THE TEXT MESSAGE FROM LAWLESS**

As previously noted, the *Faragher/Ellerth* defense requires the Bank to prove it exercised reasonable care to prevent and correct any-harassing behavior. The facts relevant to this defense are straightforward:

- Plaintiff Henry made a complaint using the Bank's anti-harassment policy on August 15, 2015;

- The Bank promptly investigated her complaint the following;

- Lawless was counseled concerning his unprofessional conduct and issued a final written warning on or Around August 20, 2015; and

- The corrective action taken by the Bank was effective.[1]

The Case Detail Report and emails concerning the Bank's investigation have been produced. Mr. McMichael and Ms. Damyanidu each provided extensive deposition testimony about the investigation and the Bank's decision to issue a final written warning for Lawless. But Attorney Bechtel's legal advice to Human Resources concerning the level of discipline issued to Lawless as the result of the investigation has nothing to do with the investigation or the effectiveness of the corrective measures adopted by the Bank.

To get around these facts, Plaintiff's opposition erroneously asserts that the Bank "did not argue, nor present any evidence in their moving papers, to support their allegations that Ms. Bechtel did not provide any advice on how to conduct the investigation, or make any employment decision concerning Defendant Lawless." Pl. Mem. of Law (Dkt. No. 64) at 5. On the contrary, Attorney Bechtel's supporting declaration does not suggest she had any involvement in the investigation, and she specifically limited her involvement to Human Resource's request "for legal advice about the Bank's decision to issue a final written warning to former Branch Manager, Hugh Lawless." Dkt. No. 49, Ex. A at ¶ 7. The deposition transcripts of Mr. McMichael and Ms. Damayindu, attached to Dkt. No. 50, do not contain a line of testimony suggesting Attorney Bechtel had any role in the investigation.

Plaintiff declares that she "presented deposition transcripts and copies of the investigation reports with Ms. Bechtel's name listed that suggest she participated in the

---

[1] *See* "Case Details" for the Bank's investigation of Henry's Complaint, Docket No. 50-5. The Amended Complaint is devoid of any allegation suggesting Lawless engaged in further harassing conduct after Plaintiff Henry made her complaint on August 15, 2015.

investigation, reviewed the investigative findings, and made the determinations as to whether sexual harassment had occurred, and whether and how Mr. Lawless should be disciplined." Pl. Mem. of Law (Dkt. No. 64) at 5. Not a single line of testimony is cited. Instead, Plaintiff cites "Dkt. #16" which is actually a document entitled "REQUEST FOR ISSUANCE OF SUMMONS as to Hugh Lawless."[2]

The Bank is not asserting that its investigation of Plaintiff's Henry complaint concerning Lawless's misdirected text message is privileged. But the critical distinction between this case – and those cited by the Magistrate Judge – is that Attorney Bechtel neither conducted the investigation nor provided advice on how to conduct the investigation. *Cf. Johnson v. J. Walter Thompson U.S.A., LLC*, 16 Civ. 1805 (JPO)(JCF), 2017 WL 3432301, at *1 (S.D.N.Y. Aug. 9, 2017) (concerning "an internal investigation conducted by attorney Bettina B. Plevan and the law firm of Proskauer Rose LLP"); *Koumoulis v. Independent Fin. Marketing Grp., Inc.*, 29 F. Supp. 3d 142, 146 (E.D.N.Y. 2014) (finding outside counsel "was not a consultant primarily on legal issues, but instead ... helped supervise and direct the internal investigations as a primary adjunct member of Defendant's human resources team."). To the extent the Bank needs to articulate why it decided to issue a final written wanting to Lawless, McMichael fully explained his reasoning during his deposition (Dkt. No. 50, Ex. A at pp. 47-48), and at trial, would do so without reference to any specific legal advice provided by counsel or reference to

---

[2] In fact, the "Case Details" for the Bank's investigation of Henry's Complaint establishes that Attorney Bechtel was not granted access to the document until October 29, 2015 – *i.e.*, 50 days after Plaintiffs and Lawless were terminated on September 9, 2015 and 25 days after Plaintiff Henry had filed her charge of discrimination with the U.S. Equal Employment Opportunity Commission. Dkt. No. 50-5 at D000244.

his consultation with Attorney Bechtel. The Magistrate Judge's Memorandum and Order is clearly erroneous and misapprehends the nature of the *Faragher/Ellerth* defense in this context.

## II. A GENERAL "GOOD FAITH" AFFIRMATIVE DEFENSE, WITHOUT MORE, IS NOT SUFFICIENT TO WAIVE THE ATTORNEY-CLIENT PRIVILEGE

The Second Circuit has concluded that simply because privileged information is relevant to a claim or defense in the case does not give rise to an implied waiver; rather, to forfeit privilege, "the party must *rely* on privileged advice from his counsel to make his claim or defense." *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008). As the Magistrate Judge correctly noted, the Bank has expressly disclaimed reliance on counsel as part of its defense. To reiterate, the Bank is not claiming that it relied on legal advice as part of its good faith defense to a punitive damages claim by Plaintiffs. The Bank's good faith defense in this context – "in keeping with its supervisory authority over Plaintiffs" – does not relate to its understanding of a specific statutory requirement based on information provided by legal counsel.

A recent federal district court case, decided on August 9, 2018, aptly illustrates the Bank's position when it held under similar circumstances that "as long as Defendants do not insert reliance on advice of counsel as an issue in the litigation, no automatic waiver of the attorney-client privilege occurs when Defendants simply assert two good faith affirmative defenses that are standard defenses to avoid punitive damages." *Blake v. Batmasian*, No. 15-81222-CIV, 2018 WL 3829803, at *7 (S.D. Fla. Aug. 9, 2018). The underlying Report & Recommendation in *Blake* cited to *Butterworth v. Lab. Corp. of Am. Holdings*, No. 3:08-CV-411-J-34JRK, 2010 WL 11470895, at *5 (M.D. Fla. Dec. 2, 2010), *aff'd*, No. 3:08-CV-411-J-34JRK, 2011 WL 13137953 (M.D. Fla. Oct. 14, 2011). As explained in *Butterworth*,

4

"Defendant's contention that its actions were made in 'good faith' and were 'lawful' does not transform this case into one in which advice of counsel is at issue. Rather, the Court construes the reference to 'lawful' as referring to the requirements imposed by Title VII and Defendant's efforts to comply with it." *Id.* at *5. A similar result should be obtained here.

The Bank's assertion of good faith in its affirmative defenses to punitive damages "is separate and apart from the advice it received from counsel." *Id.* at *6. The Bank does not intend to rely on conversations with in-house counsel to prove the Bank acted in good faith in its compliance with Title VII. As the Bank previously explained, enforcing the privilege as to any legal advice provided by Attorney Bechtel will not "prevent [plaintiffs] from understanding how defendants reached the decision to terminate [their] employment, and [they] certainly can discover this without asking what legal advice was sought and received from [in-house] counsel." *Anderson v. E. CT Health Network, Inc.*, No. 3:12CV785 RNC, 2014 WL 109115, *4 (D. Conn. Jan. 10, 2014).

## **CONCLUSION**

Based on the foregoing, the Court should grant the Bank's motion and issue a protective order finding that any communications that Attorney Bechtel may have had with Marlys Regina, Robert McMichael, or others at the Bank regarding the Bank's decisions to issue a final written warning to Lawless and the terminations of Lawless and Plaintiffs were solely for the purpose of providing legal advice on behalf of the Bank, and that Plaintiffs are therefore prohibited from asking about such communications during depositions.

Dated: August 22, 2018

                         **HODGSON RUSS** LLP
                         *Attorneys for Defendants KeyBank National Association, Irina Damyanidu, and Robert McMichael*

                         By:   s/Joseph S. Brown
                                Joseph S. Brown
                         The Guaranty Building
                         140 Pearl Street, Suite 100
                         Buffalo, New York 14202-4040
                         Tel: 716.856.4000