UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CLAUDIA BARBINI, *et al.*,

    Plaintiffs,

-against-

FIRST NIAGARA BANK, N.A., *et al.*,

    Defendants.

16-cv-7887(NSR)(JCM)
OPINION & ORDER

NELSON S. ROMÁN, District Court Judge

    The instant case presents a thorny issue of attorney-client privilege that often accompanies corporate internal investigations. In this particular case, a defendant bank conducted a sexual harassment investigation in response to employee complaints about individual defendant Hugh Lawless ("Lawless"). The bank consulted its in-house legal counsel before terminating certain employees involved. Subsequent to those terminations, Plaintiffs Claudia Barbini and Maryetta Henry commenced this litigation, raising claims for employment discrimination and retaliation. (*See* Complaint, ("Compl."), ECF No. 7; First Amended Complaint, ("FAC"), ECF No. 26.)

    Subsequently, on May 7, 2018, KeyBank National Association[1] ("KeyBank" or "Bank") submitted a Letter Motion seeking a Protective Order to preclude Plaintiffs from asking questions concerning legal advice provided by the Bank's in-house counsel. (Letter Mot. for Protective Order, ECF No. 49.) Plaintiffs then submitted a Letter Motion seeking to reopen two defendants' depositions and requesting the Bank's privilege log that described the documents being withheld and the privilege being claimed. (Rep. Letter Mot., ECF No. 50.)

    On July 16, 2018, Magistrate Judge McCarthy issued a Memorandum and Order denying the Bank's Motion for a protective order and granting in part Plaintiffs' Motion to reopen

---

[1] Defendant KeyBank National Association is the successor by merger to First Niagara (ECF No. 47-1 at 1)

1

discovery, including defendants Robert McMichael's and Kotyuk Regina's depositions, to allow Plaintiffs further questioning about the discussions leading up to the Bank's decision to issue a final written warning and terminate three employees. (ECF No. 61.)

On July 31, 2018, Defendants appealed Judge McCarthy's decision insofar as denying their request for a protective order and granting Plaintiffs' request to reopen discovery to allow further questioning of McMichael. (*See* ECF Nos. 62, 62-1, at 3.)

For the following reasons, this Court affirms Judge McCarthy's Order.[2]

## BACKGROUND

In August 2015, Plaintiffs Claudia Barbini and Maryetta Henry ("Plaintiffs"), then employees at First Niagara Bank, N.A. ("Bank"), complained about sexual harassment from their manager, Defendant Hugh Lawless ("Lawless"). (ECF No. 50, at 1.) Consequently, the Bank assigned Robert McMichael ("McMichael"), a Human Resources representative, to investigate the sexual harassment complaint. (ECF No. 49, at 2.) Based on McMichael's recommendation, the Bank issued a "final written warning" to Lawless. (*Id.*) Shortly thereafter, the Bank terminated Plaintiffs and Lawless for alleged violations of New York State notary law and First Niagara Bank's notary policy. (*Id.*)

Plaintiffs subsequently commenced this litigation alleging that the Bank "used the notary policy as a pre-text to terminate them [for complaining about harassment]" (ECF No. 50, at 1.) In connection with their case, they deposed McMichael. During McMichael's deposition, they asked him about his decision to give Lawless a "final written warning." (ECF No. 47-2, at 3.) McMichael

---

[2] In the body of Judge McCarthy's Order, she indicated that she would allow further questioning of both McMichael and Regina in order to allow Plaintiffs to further question about the basis for issuing the final written warning to Lawless and for terminating Lawless and Plaintiffs. In the Order's concluding paragraph, however, there is only a reference to allowing the deposition of McMichael to be reopened. The Court takes this inconsistency as an inadvertent error. But since Defendants have only appealed the re-opening of McMichael's deposition, the Court is constrained to assessing the merits of that appeal. To the extent that Defendants intended to appeal the reopening of Regina's deposition as well, they are to raise that issue with Judge McCarthy.

relayed that he discussed the decision with Lawless' manager, Irina Damyanidu ("Damyanidu"), and the Bank's in-house counsel, Lura Bechtel ("Bechtel"). (*Id.* at 3-4):

> Q: Going back briefly to your decision to issue a final warning, you mentioned that you discussed it internally with your team and you indicated that in-house counsel was one of the team members you spoke with
>
> A: Yes
>
> Q: Who did you speak with in the in-house counsel office?
>
> A: Lura Bechtel
>
> Q: Who else was on the team?
>
> A: Irina
>
> Q: Anyone else?
>
> A: No, no one else
>
> Q: Between the three of you, you discussed it in-house and came to the conclusion that you should issue a final warning?
>
> A: Yes.

McMichael repeatedly testified that he thoroughly discussed the appropriate cause of action with Bechtel and Damyanidu, but ultimately decided to issue a final written warning to Lawless instead of terminating him. Whenever Plaintiffs further probed McMichael about Bechtel's "advice" or "perspective" about issuing a final written warning, McMichael's counsel objected, invoking attorney-client privilege. (*See id.* at 4-5, 9-11.)

Plaintiffs' counsel also asked McMichael about whether he consulted Bechtel about New York's notary laws, and McMichael's counsel again invoked attorney-client privilege, though he later retracted his objections. (*Id.* at 9-25.) McMichael, however, indicated that while he consulted

3

Bechtel and Damyanidu with regards to issuing the final written warning against Lawless, he did not discuss the company's notary policy with them at any time. (*Id.*) Rather, with regards to the notary policy, he consulted Regina. (*Id.* at 11-12.)

Defendants argue that any communication Bechtel had with McMichael or others at the Bank regarding the Bank's decision to issue a final written warning were solely for the purpose of providing legal advice on behalf of the Bank and were therefore privileged communications. (*See* ECF No. 47.) They argue that Judge McCarthy's decision allowing Plaintiffs to reopen McMichael's deposition and requiring the Bank to turn over a privilege log should be overturned because: 1) The Bank did not *rely* on it in-house counsel's advice regarding the sexual harassment investigation or final written warning in deciding to terminate the three employees, and 2) the Case Detail Report and e-mails concerning the Bank's investigation have been produced; thus no documents concerning the investigation have been withheld on the basis of privilege. (*See* Objections to Memorandum & Order, ECF No. 62-2, at 9.)

Plaintiff's disagree. (*See* ECF No. 64.) They argue that Judge McCarthy's decision should be confirmed because while the Bank did not affirmatively assert that it relied on communications with counsel in making its decision to terminate the employees, other evidence reflects that Bechtel "participated in the investigation, reviewed the investigative findings, and made determinations as to whether sexual harassment had occurred, and whether and how Mr. Lawless should be disciplined." (*See* Plaintiff's Opposition, ("Pl. Opp."), ECF No. 64, at 5.) Further, they argue that the lower court properly found a waiver of attorney client privilege under both the *Faragher/Ellerth* defense and advice of counsel defense. (*Id.* at 7.)

# LEGAL STANDARDS

## Standard for Reviewing Magistrate Judge Opinions

Magistrate judges are afforded broad discretion in resolving discovery disputes, and their decisions should only be reversed if the district court determines that they abused that discretion. *Sadowski v. Tech. Career Insts.*, 93 Civ. 0455, 1994 U.S. Dist. LEXIS 15590, at *1 (S.D.N.Y. Nov. 2, 1994). When reviewing a magistrate judge's ruling on a non-dispositive pretrial matter, "the district judge… must…modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A finding is "clearly erroneous" if the "reviewing court…is left with the definite and firm conviction that a mistake has been committed," and is "contrary to law" if it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *MASTRR Adjustable Rate Mortgs. Trust v. UBS Real Estate Sec. Inc.*, No. 12-CV-7322, 2013 WL 6840282, at *1 (S.D.N.Y. Dec. 27, 2013). Additionally, parties' objections to the magistrate judge's ruling may not be "conclusory or general," and the parties' briefs "may not simply regurgitate the original briefs to the magistrate judge." *Thomas v. Astrue*, 674 F. Supp. 2d 507,511 (S.D.N.Y. 2009) (internal quotation marks and citation omitted).

## Protective Orders

Federal Rule of Civil Procedure 26(c) provides that a court may issue "an order to protect a party or person [from whom discovery is sought] from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The district court has "broad discretion…to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "The party seeking a protective order bears the burden of establishing that good cause for the order exists." *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71 (S.D.N.Y. Mar. 30, 2010). "Good cause is established by

'demonstrating a particular need for protection.' " *Id.* (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)). "Ordinarily, good cause exists 'when a party shows that disclosure will result in a clearly defined, specific and serious injury.' " *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (quoting *Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005)).

### Discovery and Materials Protected by Attorney-Client Privilege

Under the federal rules, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(l). Excluded, however, are communications protected by the attorney-client privilege. Attorney-client privilege protects "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Meijia*, 655 F.3d 126, 132 (2d Cir. 2011).

"For the privilege to apply, the communication itself must be 'primarily or predominantly of legal character.'" *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 428 (S.D.N.Y. 2013) (quoting *Rossi v. Blue Cross & Blue Shield of Greater N.Y.*, 73 N.Y.2d 588, 594 (1989)). "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *In re County of Erie*, 473 F.3d. 413, 419 (2d Cir. 2007) "The burden is on a party claiming the protection of a privilege to establish those facts that are essential elements of the privileged relationship." *In re Grand Jury Subpoena Dtd. Jan. 4, 1984*, 750 F.2d 223, 224 (2d Cir. 1984).

"Application of the attorney-client privilege to the corporate context poses 'special problems.'" *Complex Sys., Inc. v. ABN AMRO Bank N.V.*, 279 F.R.D. 140, 150 (S.D.N.Y. 2011) (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985)). "In-house

counsel often fulfill the dual role of legal advisor and business consultant." *MSF Holding, Ltd. v. Fiduciary Tr. Co. Int'l*, No. 03-CV-1818(PKL)(JCF), 2005 WL 3338510, at *1 (S.D.N.Y Dec. 7, 2005). "The court therefore must proceed cautiously, recognizing that the application of the privilege 'risks creating an intolerably large zone of sanctuary since many corporations continuously consult attorneys.'" *Ovesen v. Mitsubishi Heavy Indus. Of Am. Inc.*, No. 04-CV-2849(JGK)(FM), 2009 WL 195853, at *3 (S.D.N.Y. Jan. 23, 2009) (quoting *First Chicago Int'l v. United Exch. Co.*, 125 F.R.D. 55, 57 (S.D.N.Y. 1989)). "In cases involving corporations and in-house counsel, courts have maintained a stricter standard for determining whether to protect confidential information through the attorney-client privilege." *See e.g. Bank Brussells Lambert v. Credit Lyonnais (Suisse), S.A.*, 220 F. Supp. 2d 283, 286 (S.D.N.Y. 2002) (explaining that while attorney-client privilege developed "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests," courts more narrowly the privilege with in-house legal counsel because they "are employees of their client, and their livelihood depends on that single corporate client…[thus], they are not as independent as outside counsel.").

### Waiving Attorney-Client Privilege

"[R]ules which result in the waiver of the [attorney-client] privilege and thus possess the potential to weaken attorney-client trust," have been formulated with caution. *In re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008). Courts have found waiver by implication in three circumstances: (1) "when a client testifies concerning portions of the attorney-client communication;" (2) "when a client places the attorney-client relationship directly at issue;" and (3) "when a client asserts reliance on an attorney's advice as an element of a claim or defense." *Id.* A party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing

7

party." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000). A person may waive protection where he asserts a factual claim of truth of which can only be asserted by examination of a privileged communication. *Browne, Inc., v. AmBase Corp.*, 150 F.R.D. 465 (S.D.N.Y. 1993). Any type of advice of counsel may be waived where a party's state of mind, such as his good faith belief in the lawfulness of his conduct, is relied upon in support of a defense. *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC.*, 2012 U.S. Dist. LEXIS 92435, at *17-18 (S.D.N.Y. July 2, 2012).

### The *Faragher/Ellerth* Defense

"In discrimination cases, the issue of waiver frequently arises when a defendant raises what is known as the *Faragher/Ellerth* defense." *Johnson v. J. Walter Thompson U.S.A., LLC*, No. 16-CV-1805(JPO)(JCF), 2017 WL 3432301, at *8 (S.D.N.Y. Aug. 9, 2017). The *Faragher/Ellerth* Defense allows an employer to escape liability if it can show (1) the employer exercised reasonable care to prevent and correct any-harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities that the employer provided. *Vance v. Ball State University*, 570 U.S. 421, 423 (2013). "When an employer puts the reasonableness of an internal investigation at issue by asserting the *Faragher/Ellerth* defense, the employer waives any privilege that might otherwise apply to documents concerning that investigation." *Koumoulis v. Independent Fin. Marketing Group Inc.*, 295 F.R.D. 28, 41 (E.D.N.Y. 2013).

### DISCUSSION

Plaintiffs argue that Judge McCarthy's decision should be upheld because even if the bank expressly disclaimed reliance on counsel as part of its defense, through the substance of their answer and testimonial evidence, they invoked *Farragher/Elleth* and advice of counsel defenses. (*See* Pl. Opp., ECF No. 64, at 5.) They also argue that Defendants failed to prove that they would be prejudiced by the further questioning of McMichael about his communications with Bechtel or

by turning over additional documentary evidence related to those communications. Hence, they argue, Judge McCarthy properly found that Defendants failed to prove need for a protective order.

Because there are two sets of communications at issue – those related to the final written warning and those related to New York Notary Law – the Court discusses Judge McCarthy's ruling on the attorney-client privilege attached to each separately.

**Communications Related to New York Notary Laws**

The Court agrees with Judge McCarthy that Bechtel's communications with McMichael and Regina likely involved both legal and business advice. As a matter of law, the purpose of communication "need not be exclusively legal in order for the privilege to attach." *Johnson*, 2017 WL 3432301, at *3. The Court finds that any communications that were just about New York notary laws were undisputedly legal in nature. Thus, the Court upholds Judge McCarthy's decision that those communications are covered by attorney-client privilege. (*See* Order, ECF No. 61.)

**Communications Related to the "Final Written Notice"**

The Court next addresses the written records related to issuing final written notice to Lawless. The record suggests that the Bank generally involved in-house counsel whenever reviewing allegations of misconduct. (*See* ECF No. 50-1, at 7.) It also suggests that when the Bank invited advice from its in-house counsel, rather than a non-legal manager, it was usually seeking legal advice. The deposition transcript and Betchel's sworn declaration also reflects that Betchel's advice was generally legal in nature. (*See* ECF No. 47-1 at ¶¶ 7, 8; ECF No. 50-1 at 7, 13–14). And one of Bechtel's regular duties was to provide employment-related legal advice on various personnel decisions. Communicating "legal analysis to the person ultimately deciding whether to fire and employee" is "precisely the type of legal advice that is protected by the attorney-client privilege." *Fletcher v. ABM Building Value*, No. 14-CV-4712(NRB), 2017 WL 1536059, at *3

9

(S.D.N.Y. Apr. 18, 2017). Accordingly, the Court finds that Judge McCarthy correctly held that these communications were also covered by attorney-client privilege.

### Waiver of Attorney-Client Privilege

Plaintiffs argue that Judge McCarthy correctly found a waiver of attorney-client privilege, as the Bank waived its attorney-client privilege in at least two ways, neither of which involved expressly raising an "advice of counsel" defense. (Pl. Opp., at 4-9.) The Bank, however, claims that because Judge McCarthy repeatedly admitted that the conversations with Bechtel likely involved legal advice, and because the Bank did not expressly assert a *Faragher/Ellerth* or advice of counsel defense in its answer, Judge McCarthy's decision was clearly erroneous, and those communications ought to remain privileged. (Def. Mem. at 5-9.)

The Court agrees with Plaintiffs. At the onset, neither party disputes that the advice related to the harassment investigation and notary laws were sufficiently legal in nature. The parties essentially contest whether the Bank has waived its privilege over such communications. To that end, the Court agrees with Judge McCarthy that the Bank has not expressly asserted an "advice of counsel" defense anywhere in its answer. And as Judge McCarthy noted, Defendants expressly disclaimed reliance on counsel in a subsequent letter. (*See* ECF No. 55, at 2.) But, as Judge McCarthy also noted, these facts alone do not control whether Defendants waived their privilege because even where defendants have not asserted an advice of counsel defense, courts have found waivers if the evidence *implies that defendants relied* on counsel's advice, *see In re Grand Jury*, 219 F.3d 175, or defendants assert that they undertook good faith efforts to prevent and remedy any alleged discrimination or retaliation pursuant to their internal procedures and plaintiffs failed to fully avail themselves of available avenues—i.e. raised a *Faragher/Ellerth* defense.

10

The Court agrees with Judge McCarthy. Defendants did—through testimony relating to their use of counsel's advice and through the content of their answer—waive their privilege.

Turning first to Defendants' implied reliance on counsel, throughout his deposition, McMichael stated that Bechtel made or assisted in making pivotal determinations regarding how to handle the sexual harassment investigation and how to discipline the individuals involved. (*See generally* ECF No. 50-1.) Although a close call, McMichael's testimony went further than just "generalized references to counsel's advice." (*See e.g. id*. at 47-48) ("Q: So, you made the decision to issue him a final warning. Why did you choose to issue him a final warning instead of terminate?; A: We thoroughly discussed it internally through our process and talked—(interrupted); Q: Who is we?; A: We being our in-house counsel, Irina…"); (*id*. at 55) ("Q: In fact, it wasn't confirmed that [Lawless' sending the inappropriate text message] was an accident, you were *relying* on what people were telling you; is that right?; A: Correct.") (emphasis added).

Again, the Second Circuit has explained at-length that waiver by implication typically occurs when a client testifies about portions of the attorney-client communication, places the relationship directly at issue, or asserts reliance on the attorney's advice as part of its claim or defense. *In re Erie*, 546 F.3d 222. It has further explained that the "key to a finding of implied reliance" is assessing whether the witness testified about "the basis of his understanding that his actions were legal." *Id*. at 228.

Judge McCarthy was not clearly erroneous in finding that McMichael's decided to issue a final written warning to Lawless after "thoroughly discuss[ing] it" with his in-house counsel and relying on facts and characterizations that others relayed to him. The Bank's defense that its reason for terminating Plaintiffs was not discrimination or retaliation and was solely due to Plaintiffs' violating the notary policy hinges on the two investigations being truly separate. But the only way

11

to assess their separateness is by accepting McMichael's testimony that he relied on Bechtel's advice and handled the first one appropriately and independently of the second. The Court finds that this argument opens the door under *In re County of Erie* as the Bank indirectly asserts reliance on Bechtel's legal advice as a defense to Plaintiffs' employment discrimination claims.

More significantly, Defendants have also raised a *Faragher/Ellerth* defense twice in their answer. They raise it first by asserting that "First Niagara asserts that it undertook good faith efforts to prevent and remedy any alleged discrimination or retaliation and that Plaintiffs unreasonably failed to avail themselves of First Niagara's internal procedures for remedying any such discrimination or retaliation" (*see* Answer ¶ 48), and second by stating that "any employment actions taken by First Niagara towards Plaintiffs was for reasons that were job-related and consistent with business necessity." (*Id.* ¶ 37.)

In stating that the Bank "undertook good faith efforts to prevent and remedy any alleged discrimination or retaliation," and that Plaintiffs' failed to avail themselves of a particular remedy, the Bank is raising the quintessential *Faragher/Ellerth* defense. It is implying that the sexual harassment investigation was handled according to protocol and had nothing to do with their subsequently firing Plaintiffs for violating the notary policy. But again, in making this compound defense, the Bank is unilaterally relying on the confidential and privileged sexual harassment investigation, which it suggests was handled appropriately.

Such one-sided reliance creates the type of unfairness to opposing counsel that waives the communication's privilege. *See In re Cty. of Erie*, 546 F.3d 222 (2d Cir. 2008) (explaining that underlying the case-by-case determination that a privilege should be forfeited is the notion of fundamental unfairness—that is "the type of unfairness to the adversary that results in litigation circumstances when a party uses an assertion of fact to influence the decisionmaker while denying

12

its adversary access to privileged material potentially capable of rebutting the assertion") (citation omitted); *see also Johnson v. J. Walter Thompson U.S.A., LLC*, No. 16-cv-1805, 2017 WL 3432301, at *7 (S.D.N.Y. Aug. 9, 2017) ("A person may waive protection where he 'asserts a factual claim the truth of which can only be assessed by examination of a privileged communication[]'") (quoting *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 488 (S.D.N.Y. 1993)).

Accordingly, Judge McCarthy's finding that that the Bank functionally raised a *Faragher/Ellerth* defense, which waived its attorney-client privilege, was not clearly erroneous.

### Limited Re-Opening Deposition Questioning of McMichael and Regina

Judge McCarthy did not find that Defendants waived the attorney-client privilege *carte blanche*. Rather she limited the waiver to Bechtel's "advice only with respect to their decision to terminate Plaintiff[s]' employment." (*See* Order, ECF No. 61, at 10.) Accordingly, she permitted Plaintiffs "to question McMichael and Regina regarding the legal advice that Bechtel provided in connection with the decision to give Lawless the final warning and the later decisions to terminate Lawless and Plaintiffs." (*Id.*)

The Court finds these parameters appropriate for reopening depositions. *See Asberry,* 2009 WL 3073360, at *2 (permitting questioning of counsel as "to the advice provided by him or any other attorney concerning the possibility of terminating employment, including all information that was considered in connection with such advice.") While Defendants repeatedly try to frame the issues with the Bank's harassment policy and with notary policy as separate, they are intimately related as Defendants' only defense for why the harassment investigation was not the basis for the terminations is that the notary issue was.

Defendants cannot have their cake and eat it too. There is virtually no way for any decisionmaker or adversary to assess the veracity of Defendants' defense if the documents and conversations related to both investigations are concealed. This is precisely the type of situation in which Courts have found an implied waiver of attorney-client privilege. *See e.g., John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003) (explaining that it would be unfair to allow a party to "use an assertion of fact to influence the decision maker while denying its adversary access to privileged material potentially capable of rebutting the assertion.")

Accordingly, Judge McCarthy's decision to limitedly reopen deposition questioning of McMichael and Regina is affirmed.

**Disclosure of Documentation from Human Resources Investigation**

Plaintiffs lastly request that the Court order the Bank to disclose documentation from First Niagra's sexual harassment and notary investigations that may have been withheld on the basis of privilege. (ECF No. 50, at 1.) For similar reasons that the Court finds it appropriate to limitedly reopen certain depositions, the Court finds it appropriate to permit access to the Bank's documentary records related to the investigation that have not been turned over.

Further, the Court agrees that Defendants have not set forth any harm that further document discovery would cause Defendants. Defendants' only reason for seeking a protective order is that they intended to keep their communications confidential. Defendants do not allege that disclosing the conversations that Bechtel had with McMichael or Regina during the notary and sexual harassment investigations would reveal any information related to Defendants' litigation strategy.

As such, Defendants have not met their burden of proof for getting a protective order.

## CONCLUSION

For the reasons set forth above, the Court affirms Judge McCarthy's Memorandum and Order. That is, it DENIES the Bank's motion for a protective order and GRANTS in part Plaintiffs' motion to reopen discovery insofar as deposing McMichael and Regina. With regards to these depositions, however, Plaintiffs questioning is limited to McMichael's and Regina's conversations regarding the basis for Lawless' discipline and Lawless' and Plaintiffs' terminations.

The Bank is also directed to produce a privilege log describing the documents being withheld and identifying the nature of the privilege being claimed so that, if necessary, Judge McCarthy can review such documents *in camera*.

Dated: April 29, 2019
      White Plains, NY

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge